Scott A. Lucas (SL-6316)
Steven M. Sack (SS-4479)
Law Offices of Scott A. Lucas
The Lincoln Building – Suite 1001
60 East 42nd Street
New York, NY 10165
(212) 573-6906

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

YOU YOU XIA, PETER CLASEN and
CHULEEPORN PHUTRAKUL, individually
and on behalf of all others similarly situated,

08-cv-4415 (JGK)

**DECLARATION OF
SCOTT A. LUCAS**

*Plaintiffs*,

-against-

BYO CO. (USA), LTD. d/b/a EN
and REIKA YO,

*Defendants*.
--------------------------------------------------------X

I, Scott A. Lucas, having personal knowledge of the facts

below, declare the truth of the following under penalty of perjury:

1.    I am an attorney admitted to practice before this Court

and am the principal of the Law Offices of Scott A. Lucas, attorneys for

Plaintiffs in the above matter.  I submit this Declaration in Support of

Plaintiffs' Motion for an order: **(A)** approving Plaintiffs' proposed collective

action notice under section 216(b) of the FLSA and compelling Defendants

to immediately disclose the names and last known addresses and telephone numbers of each former and current server, bartender, busser and runner who worked at EN from September 1, 2004 to the present; and **(B)** certifying this case as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, for a class consisting of all persons who have worked at EN as servers, bartenders, runners or bussers from September 1, 2004 to the date of final judgment in this matter.  The Complaint is attached hereto as Ex. "A".

2.    Plaintiffs' proposed collective action notice under section 216(b) of the FLSA is consistent with Plaintiffs' retainer agreement and is based on the collective action notice approved in another case involved claims of unpaid minimum wages and unlawfully expropriated tips, *Sipas v. Sammy's Fishbox, Inc.*, 2006 WL 1084556 (S.D.N.Y. April 24, 2006) (Ex. "B" hereto), except that the proposed notice in this case has been slightly modified to include the following sentence:  "**EN and Reika Yo are not allowed to retaliate against you in any way for exercising your right to join this lawsuit.**"  (Ex. "C" hereto).

3.    As to Plaintiffs' motion for class certification under Rule 23(b)(3), each of the requirements of Rule 23(g) are met.  These requirements are addressed in turn.

**Work done in identifying or investigating
potential claims in this action**

        4.     For the past six months (*i.e.*, since late-February 2008), I
have spent considerable time identifying and investigating potential claims
in this action, including, without limitation:  (a) conducting multiple, in-
person interviews with each of the named Plaintiffs, and frequently
corresponding with each of them by phone and email concerning the
underlying facts of this case; (b) analyzing available documents and payroll
records; (c) meeting with experienced investigators regarding accounting
practices and audits of restaurants; and (d) researching the application of
applicable federal and state law to the facts of this case.

**Experience and Competence**

        5.     I am in my 14th year of practice as an attorney admitted
to this Court.  Steven M. Sack, who is "of counsel" to my firm, is also
admitted to practice before this Court and is in his 28th year of practice.

        6.     I am a member of the National Employment Lawyers
Association, and am experienced in wage and hour litigation, including
complex multi-party litigations in the restaurant industry.  Another case
where I teamed up with Steven M. Sack to represent a group of waitstaff
employees was *Samiento, et al. v. World Yacht, Inc., et al.*, 10 N.Y.3d 70

(2008) – a case which has had a widespread impact on the restaurant and banquet industry in New York.  In *Samiento*, I successfully argued before the New York Court of Appeals on behalf of 14 waitstaff employees suing to recover the "service charge" added to banquets in place of the traditional tip. *See* Ex. "D" hereto (press release issued by the New York City Bar Association's Legal Referral Service).  This action is similar to the *World Yacht* litigation inasmuch as both actions include claims for unpaid gratuities under NYLL § 196-d and claims for violations of the Fair Labor Standards Act and its state law counterpart.

7.     The Legal Referral Service of the New York City Bar Association specifically referred Plaintiffs to myself and Mr. Sack due to our experience in this area of the law.

8.     I also have sufficient trial experience.  My most recent trial (*Brown v. Suggs*, Index No. 605492-00 (New York Country Supreme Court, Nov. 2007) followed an extraordinarily difficult, complex and hard-fought litigation, and resulted in a highly-publicized $2.6+ million jury verdict (subsequently reduced) in favor of a real estate salesperson who sued her supervising broker for unpaid commissions and abuse of process.  *See* Ex. "E" hereto (excerpts of news articles).

**Counsel's knowledge of the applicable law**

9.　My knowledge of the applicable law is substantial and has been acquired over the course of years of my law practice, including research over the course of 3½ years into the social and historical underpinnings of the custom of tipping, and the text, structure, legislative history and legal and administrative interpretations of Labor Law § 196-d.

10.　As for Mr. Sack, he not only is an experienced employment law practitioner, but has been repeatedly recognized as an expert, and has testified in court numerous times over the past 20+ years as an expert on the subject of employment disputes and industry practices.  Mr. Sack is also the author of 18 legal books, including *The Employee's Rights Handbook*, *Getting Fired* and *The Working Woman's Legal Survival Guide*. Mr. Sack's biography is attached as Ex. "F".

**Resources counsel will commit to representing the class**

11.　My firm will devote whatever resources are needed to represent the class, and has already retained an investigative firm to aid in the process.  My firm is prepared to advance all costs that my firm may be required to expend in connection with hiring investigators, auditing Defendants' records, conducting depositions and hiring experts if needed.

My firm has sufficient funds to cover all of these necessary costs, and I will ensure that any and all such funds remain available for this purpose during the pendency of this action.

WHEREFORE, I respectfully submit that the requirements of Rule 23(g) are met, and ask that Plaintiffs' motion be granted.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 28, 2008.

New York, New York

_____
SCOTT A. LUCAS

# EXHIBIT A

Scott A. Lucas (SL-6316)
Steven M. Sack (SS-4479)
Law Offices of Scott A. Lucas
The Lincoln Building – Suite 1001
60 East 42nd Street
New York, NY 10165
(212) 573-6906

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

| | |
|---|---|
| YOU YOU XIA, PETER CLASEN and CHULEEPORN PHUTRAKUL, individually and on behalf of all others similarly situated, | 08-cv-4415 (JGK) |
| | COMPLAINT |
| *Plaintiffs*, | COLLECTIVE AND CLASS ACTION |
| -against- | |
| | ECF CASE |
| BYO CO. (USA), LTD. d/b/a EN and REIKA YO, | |
| *Defendants*. | |

--------------------------------------------------------X

Plaintiffs YOU YOU XIA, PETER CLASEN and CHULEEPORN PHUTRAKUL (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by their attorneys, the Law Offices of Scott A. Lucas, allege as follows for their Complaint against Defendants BYO CO. (USA), LTD. d/b/a EN and REIKA YO (collectively, "Defendants"):

## **INTRODUCTION**

1.      This action is brought to recover unpaid minimum wages and unlawfully expropriated tips pursuant to the Fair Labor Standards Act,

1

29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL").

2.    Since it was founded in September 2004, the Japanese brasserie in lower Manhattan known as "EN" has failed to compensate its waitstaff at the federal and state minimum wage and has unlawfully expropriated and redistributed part of the waitstaff's tips.

3.    Plaintiffs seek compensation and credit for the difference between the hourly minimum wage and the hourly wages actually paid to them, as well as other unpaid minimum wages, unpaid tips, liquidated damages, attorney's fees, interest and costs under the FLSA and NYLL.

### JURISDICTION & VENUE

4.    This Court possesses subject matter jurisdiction over Plaintiffs' claims alleging violations of the FLSA, 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. § 1367.

5.    The events and omissions giving rise to the claims herein occurred in this judicial district.  Venue is proper pursuant to, *inter alia*, 28 U.S.C. § 1391.

# THE PARTIES

**Plaintiffs**

6.    Plaintiff YOU YOU XIA is a natural person currently residing at 179 Prince Street, apt. 20, New York, New York.

7.    Plaintiff YOU YOU XIA was employed by EN from September 2004 through July 2007, working primarily as a server.

8.    Plaintiff PETER CLASEN is a natural person currently residing at 300West 110th Street, apt. 20K, New York, New York.

9.    Plaintiff PETER CLASEN was employed by EN from August 2005 through July 2007, working primarily as a server.

10.    Plaintiff CHULEEPORN PHUTRAKUL is a natural person currently residing at 2958 Murdock Rd., Wantaugh, New York.

11.    Plaintiff CHULEEPORN PHUTRAKUL was employed by EN from about November 2005 through August 2007, working as a runner and as a server.

12.    At all times mentioned herein, Plaintiffs regularly engaged in interstate commerce in connection with their employment, including, but not limited to, participating in the handling of credit card transactions that involve the interstate banking and finance systems, and in the rendition of services to out-of-state patrons.

3

**Defendants**

13.     Upon information and belief, Defendant BYO CO. (USA), LTD. d/b/a EN (hereinafter, "EN") is a corporation organized and existing under the laws of the State of New York, which operates as an upscale Japanese restaurant at 435 Hudson Street in lower Manhattan.

14.     Upon information and belief, Defendant REIKA YO is a resident of the State, City and County of New York.

15.     Upon information and belief, at all times mentioned herein REIKA YO was an owner, operator and manager of EN.

16.     Upon information and belief, at all times mentioned herein REIKA YO was an agent of EN, and in doing the things alleged in this Complaint was acting within the course and scope of such agency.

17.     Upon information and belief, at all times mentioned herein, each Defendant was, in relation to plaintiffs, an employer or joint employer of Plaintiffs.

18.     Upon information and belief, at all times mentioned herein, each Defendant had actual or constructive knowledge of, and directed, controlled, ratified, participated in, condoned and/or was a moving force behind the wage and hour violations alleged herein.

19.    Upon information and belief, each Defendant has benefited, either directly or indirectly, from the wage-related underpayments described in greater detail herein.

20.    At all times mentioned herein, Defendants, collectively and individually, had at least two employees engaged in commerce.

21.    At all times mentioned herein, the activities described herein of Defendants were related and performed through common control for a common business purpose, and constituted an enterprise within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203[r]).

22.    At all times mentioned herein, Defendants employed employees at EN's premises in handling, selling, or otherwise working on goods and materials, including, but not limited to, food and alcoholic and other beverages which had moved in or been produced for commerce by other persons.

23.    Upon information and belief, at all times mentioned herein, the annual dollar volume of business of Defendants exceeded $500,000.

# CLASS ACTION ALLEGATIONS

24.    The claims in this Complaint arising under the NYLL are brought by plaintiff under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class consisting of all persons who have worked as members of the waitstaff (*i.e.*, servers, runners, bussers and bartenders) at EN between September 2004 and the date of final judgment in this matter (sometimes referred to herein as the "Rule 23 Class").

25.    The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

26.    EN has a seating capacity of 200 and, in any given week, employs approximately 15-20 waitstaff employees (servers, runners, bussers and bartenders).

27.    EN's waitstaff, in any given week, consists of approximately 10-12 servers, 4 runners, 3 bussers and 2 bartenders.

28.    There is generally a high turnover among waitstaff employees at EN.

29.    Upon information and belief, the size of the Rule 23 class is at least 50 persons, although the precise number of such employees is not known by plaintiffs at this time.  Facts needed to ascertain the precise size of the class are presently within the sole control of Defendants.

6

30.    Defendants have acted or have failed and/or refused to act on grounds generally applicable to the Rule 23 Class.

31.    Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually, including, *inter alia*, the following:

(a)    whether Defendants violated NYLL §§ 652, 196-d and 193 as alleged herein;

(b)    whether Defendants unlawfully created and implemented tip pooling schemes whereby EN's waitstaff has been forced to share part of their tips and gratuity charges with managers, kitchen staff and other employees who do not customarily and regularly receive tips;

(c)    whether Defendants failed to pay the waitstaff's minimum wage, and whether Defendants made unlawful deductions from the waitstaff's pay; and

(d)    the nature and extent of the class-wide injury and the measure of damages for those injuries.

32.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class have worked as members of EN's waitstaff within six years prior to filing this Complaint.  They enjoy comparable statutory rights to be paid for all hours worked, to be paid not less than the minimum wage, and to keep the tips and gratuity charges they earn.

33.    Plaintiffs and the Rule 23 Class Members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

34.    Plaintiffs and the Rule 23 Class have all been under-compensated due to Defendants' common policies, procedures and practices.

35.    Plaintiffs will fairly and adequately protect the interests of the members of the Rule 23 Class, and have retained counsel competent and experienced in wage and hour litigation.  There is no conflict between Plaintiffs and the Rule 23 Class Members.

36.    The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' systemic policies, practices and procedures.

37.    A class action is superior to other available methods for the fair and efficient adjudication of this dispute because, *inter alia*:

(A)    the relative damages suffered by the individual class members are small compared to the expense and burden of individual prosecution of this litigation;

(B)    individual restaurant workers (including EN's past and present waitstaff employees) generally lack the financial resources to hire attorneys to vigorously prosecute their claims, much less to conduct a thorough examination of Defendants' time-keeping and compensation practices;

(C)    many if not most of EN's past and present waitstaff employees would, upon information and belief, be

reluctant to individually file or otherwise affirmatively assert claims against Defendants outside of the protective umbrella of a class action because most of them are immigrants from Japan or other countries with cultural traditions that place less emphasis on individual rights, and that are not generally supportive of employees asserting their rights individually; and

(D)    a class action will obviate the need for unduly duplicative litigation that could result in inconsistent judgments concerning the legality of Defendants' practices and the damages recoverable for specific types of employment law violations.

38.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## COLLECTIVE ACTION ALLEGATIONS

39.    The claims in this Complaint arising out of the FLSA are brought by Plaintiffs on behalf of themselves and similarly situated persons who have worked at EN since at least September 2004, and who elect to opt-in to this action (the "FLSA Collective").

40.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs.

41.    The employment culture at EN was such that inquiries by employees concerning their rights were generally viewed by EN with suspicion or disapproval, or both.  As a result, waitstaff employees were

9

often reluctant to ask such questions, or to articulate their concerns; on the rare occasions when such questions were asked or when such concerns were articulated, the waitstaff's employees generally did so in a timid, muted fashion for fear of adverse consequences.

42.    In addition, Defendants violated their obligation to post the notice required by the FLSA, 29 C.F.R. § 516.4.

43.    Defendants failed to post any sort of FLSA-related notice until spring of 2007, at which time Defendants, upon information and belief, learned that the New York State Department of Labor would be showing up at the restaurant.

44.    Plaintiffs (and, upon information and belief, EN's other waitstaff employees), did not have actual notice of their rights under the FLSA at any time prior to spring of 2007.

45.    Upon information and belief, there are at least 50 similarly situated current and former employees of EN who have been underpaid in violation of the FLSA and who would benefit from the issuance of court-supervised notice of and opportunity to join this lawsuit.

46.    Those similarly situated employees are known to Defendants and are readily identifiable and locatable through Defendants' records.

10

47.     Pursuant to 29 U.S.C. § 216(b) these similarly situated employees should be notified of and allowed to opt into this action.

## CLASS-WIDE ALLEGATIONS

48.     Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively, the "Class Members") have been victims of Defendants' policies and practices that violate the FLSA and NYLL by, *inter alia*, willfully confiscating or unlawfully retaining a portion of the tips and gratuity charges to which they are entitled under Labor Law § 196-d, failing to pay the statutorily-mandated minimum wage, and taking unlawful deductions from Plaintiffs' paychecks.

49.     Plaintiffs and Class Members are employees who, during their employment at EN, fell under the category of "tipped employees" who regularly and customarily earned more than $30 per month in tips (29 U.S.C. 203[t]), and were required by Defendants to participate in a tip-pooling scheme.

50.     As part of its regular business practices, Defendants have intentionally, willfully and repeatedly harmed Plaintiffs and the Class Members by engaging in a pattern, practice and/or policy of violating the FLSA and NYLL, by, *inter alia*, depriving the waitstaff of the tips that they

earned, improperly taking a "tip credit" for waitstaff employees, redistributing portions of the tips earned by the waitstaff to employees who are not entitled to such tips under the FLSA and the NYLL, and failing to pay waitstaff employees for all of their time worked.

51.    Defendants have engaged in this unlawful conduct pursuant to a company policy of using the waitstaff's tips to subsidize the labor costs of non-waitstaff employees, and of otherwise reducing the waitstaff's compensation by failing to pay them the minimum wage as required by law and failing to pay them for all of the time they spent working for EN.

52.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant harm to Plaintiffs and the Class Members.


## THE "TIP POOL" AT EN

53.    Defendants created and administered a compulsory tip pooling scheme whereby EN's servers are and were required to turn over all of their tips to EN's management at the end of their shift.

54.    After the servers turned in their tips, EN's management pooled the tips and redistributed the pooled tips not only to the waitstaff

(servers, bussers, runners and bartenders), but also to employees and agents of EN who were not members of the waitstaff and whose direct interaction with customers was either *de minimis* or non-existent, including EN's managers and, at one time, EN's kitchen employees.

55.    Upon information and belief, EN also redistributed a percentage of their tips to EN's wine steward even though he did not have any direct interaction with most customers.

56.    Although Plaintiffs (and, upon information and belief, EN's other waitstaff employees) did not object in principle to sharing a percentage of their tips with other members of the waitstaff (bussers, runners and bartenders), or with the one floor manager who did often directly assist and/or interact with customers (Miki Kanematsu), they did not agree and would not have agreed to have a portion of their tips redistributed to EN's management, kitchen employees, wine steward or any other non-waitstaff employees or agents.

57.    In the spring of 2006, Plaintiff You You Xia asked Floor Manager Miki Kanematsu about the issue of the waitstaff's tips being paid to managers, and Ms. Kanematsu told her, in words or substance, that the money was being used to pay for going away parties and for Christmas or holiday parties.

13

58.    Upon information and belief, EN's then-General Manager Yuki Yamashita thereafter made a similar statement to one or more of EN's other waitstaff employees.

59.    Plaintiffs (and, upon information and belief, EN's other waitstaff employees) never consented to having a portion their tips being allegedly used to throw parties.

60.    Because Defendants established and enforced an illegal tip-pooling scheme at EN, they were not entitled to reduce the minimum wages of Plaintiffs and other waitstaff employees by applying the tip credit allowance available under the FLSA and NYLL.

61.    Defendants' unlawful application of the tip credit has deprived Plaintiffs and EN's other waitstaff employees of the statutory minimum wage under the FLSA and the NYLL.

## FIRST CAUSE OF ACTION

### UNPAID MINIMUM WAGE
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

62.    The allegations of paragraphs 1 – 61 of the Complaint are incorporated herein by reference.

63.    EN and Reika Yo are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

64.    Defendants were required to pay directly to Plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

65.    Defendants were not eligible to utilize the lower federal minimum wage rate that is potentially available with respect to customarily tipped employees because, *inter alia*, Defendants were required and failed to inform Plaintiffs and EN's other waitstaff employees of the provisions of 29 U.S.C. § 203(m), and because Defendants unlawfully redistributed waitstaff tips to employees who did not customarily and regularly receive tips, which also violated 29 U.S.C. § 203(m).

66.    Defendants paid Plaintiffs and EN's other waitstaff employees less than the minimum wage even though Defendants were not entitled to take the minimum wage "tip credit".

67.    Defendants also implemented policies and practices which further violated their minimum wage obligations, including:

    (A)    not paying EN's waitstaff employees (including Plaintiffs Peter Clasen and Chuleeporn Phutrakul) for the work they performed with EN's knowledge and approval before the designated start time of their shift;

    (B)    altering the computer-recorded start time in order to deduct the first 20-30 minutes of pay for EN's waitstaff employees (including all three named Plaintiffs) when they were a few minutes late for work;

(C)     requiring EN's waitstaff employees (including all three Plaintiffs) to attend certain staff training meetings without paying them for doing so.

68.     Defendants failed to pay Plaintiffs and EN's other waitstaff employees the minimum wages to which they were entitled under 29 U.S.C. § 206.

69.     Defendants had actual or constructive knowledge that the practices described herein were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and EN's other waitstaff employees.

70.     As a result of Defendants' willful violations of the FLSA, Plaintiffs and EN's other waitstaff employees have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recover such amounts, as well as liquidated damages, pre-judgment interest, attorney's fees, costs, disbursements and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

### UNPAID MINIMUM WAGE
**(Brought on behalf of Plaintiffs and the Rule 23 Class)**

71.     The allegations of paragraphs 1 – 70 of the Complaint are incorporated herein by reference.

16

72.    Articles 6 and 19 of the NYLL expressly provide a private right of action for violations thereof. Labor Law §§ 193; 198; 663(1).

73.    At all relevant times herein Plaintiffs and the other members of EN's waitstaff have been "employees" and Defendants have been "employers" within the meaning of NYLL §§ 651(5), 652 and 190.

74.    NYLL § 652(4) expressly mandates that New York's minimum wage for customarily and regularly tipped employees shall exceed the cash wage payable under 29 U.S.C. § 203(m), and the cash wage payable for tipped employees under 29 U.S.C. § 203(m) cannot be lawfully reduced below the basic minimum wage rate *unless* such employees:

(A)    have been informed of the provisions of 29 U.S.C. § 203(m); *and*

(B)    are permitted to retain their tips without having any portion thereof distributed to employees who are not customarily and regularly tipped.

75.    Because Defendants did not explain the provisions of 29 U.S.C. § 203(m) to EN's waitstaff employees, and retained or distributed part of their tips to employees who were not customarily and regularly tipped, they could not legally avail themselves of the reduced minimum wage potentially available under the NYLL for tipped employees.

76.     In addition to the above-referenced minimum wage violations, Defendants violated their minimum wage obligations under the NYLL by failing to comply with the provisions of § 137-1.8 of Title 12 of New York's Codes, Rules and Regulations ("NYCRR"), which Labor Law § 652(2) incorporates by reference.

77.     The Minimum Wage Order codified at 12 NYCRR § 137-1.8 requires employers to either launder their employees' work uniforms or to pay their employees a prescribed amount per week attributable to the cost of doing so themselves.

78.     Plaintiffs and EN's other waitstaff employees were required to launder and maintain their work uniforms, but were not paid the minimum weekly amounts set forth in 12 NYCRR § 137-1.8.

79.     Defendants failed to pay Plaintiffs and EN's other waitstaff employees the minimum wages to which they are entitled under the NYLL.

80.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay the Plaintiffs and EN's other waitstaff employees the minimum hourly wages to which they were entitled.

81.     As a result of Defendants' NYLL violations, Plaintiffs and EN's other waitstaff employees are entitled to recover their unpaid

wages, as well as reasonable attorney's fees, costs, disbursements and prejudgment interest.

## THIRD CAUSE OF ACTION

### UNLAWFUL DEDUCTIONS IN VIOLATION OF THE NYLL
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

82.    The allegations of paragraphs 1 – 81 of the Complaint are incorporated herein by reference.

83.    NYLL § 196-d prohibits any employer or his agents, including managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

84.    Defendants deliberately and unlawfully confiscated and retained tips and gratuity charges belonging to the waitstaff and redistributed a portion thereof to, *inter alia*, employees who are not customarily and regularly tipped, including, without limitation, managers, kitchen workers and the wine steward.

85.    Plaintiffs and EN's other waitstaff employees are entitled to recover from Defendants their unpaid tips and wages, together with reasonable attorney's fees, prejudgment interest, costs and disbursements.

19

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA

Collective and the Rule 23 Class, respectfully request a judgment:

(A)    Authorizing the issuance of notice informing all members of Defendants' waitstaff employed at any time since September 2004 of the nature of this action and of their right to opt into it;

(B)    Certifying this case as a class action under Fed. R. Civ. P. Rule 23;

(C)    Awarding Plaintiffs, the FLSA Collective and the Rule 23 Class damages for unpaid wages and tips which were unlawfully confiscated and redistributed to employees and agents who are not customarily tipped;

(D)    Awarding liquidated damages to Plaintiffs and the FLSA Collective in an amount equal to twice the total amount of the wages found to be due pursuant to 29 U.S.C. §§ 216 and 260.  (Plaintiffs do not seek liquidated damages in connection with their NYLL claim.); and

(E)    Awarding Plaintiffs, the FLSA Collective and the Rule 23 Class reasonable attorney's fees and costs under the FLSA and NYLL.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. Rule 38, Plaintiffs demand a trial by jury.

Dated:        New York, New York
              May 9, 2008
                            LAW OFFICES OF SCOTT A. LUCAS
                            By_____/s/_____
                               Scott A. Lucas (SL-6316)
                               Steven M. Sack, Of Counsel (SS-4479)
                               The Lincoln Building – Suite 1001
                               60 East 42nd Street
                               New York, NY 10165
                               (212) 573-6906
                               *Attorneys for Plaintiffs*

**EXHIBIT B**

# BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP

80 PINE STREET, 32ND FLOOR

NEW YORK, NEW YORK 10005

TELEPHONE: (212) 509-1616

FACSIMILE: (212) 509-8088

WWW.BMBBLAW.COM

JONATHAN BEN-ASHER
JOHN A. BERANBAUM *
MARK H. BIERMAN
BRUCE E. MENKEN

STEPHEN H. PALITZ
OF COUNSEL

* ALSO ADMITTED NJ, PA
▲ ALSO ADMITTED NJ
◻ ALSO ADMITTED PA

JASON J. ROZGER ▲
REBECCA HOULDING ◻
TODD A. KRICHMAR

## Re: Sipas *et al.* v. Sammy's Fishbox, Inc. *et al.*, 05 Civ. 10319 (PAC)(AJP)

## *NOTICE OF LAWSUIT*

### 1.    Introduction to the Case

This notice is to inform you of a lawsuit pending in the United States District Court, Southern District of New York, against Sammy's Fishbox, Inc.; Samuel Chernin; Samuel Chernin d/b/a Fish Box Restaurant; Bridge Street Restaurant Corp.; City Island Seafood Co. Inc.; Fishbox Restaurant Corporation; and Seashore Restaurant Corp. The lawsuit claims that the defendants violated the Fair Labors Standards Act and the New York Labor Law by failing to pay eligible employees minimum wages and "spread of hour" wages on days worked in excess of ten hours, and by confiscating the employees' gratuities. The lawsuit claims that the defendants must award unpaid wages, back pay, confiscated gratuities and liquidated damages, as well as attorney's fees, costs, and statutory interest to such employees.

If you worked for Sammy's Fishbox, Inc.; Samuel Chernin; Samuel Chernin d/b/a Fish Box Restaurant; Bridge Street Restaurant Corp.; City Island Seafood Co. Inc.; Fishbox Restaurant Corporation; and/or Seashore Restaurant Corp. as a parking lot attendant in or since August 1, 1999, you might be eligible to join the lawsuit as a plaintiff.

### 2.    To Join the Case and Be Represented by Plaintiff's Counsel

If you fit the definition above, you may join the case (that is, you may "opt in") by completing and mailing the attached "Consent to Sue" form, no later than one hundred twenty (120) days after the date of this Notice, to the plaintiffs' attorneys at the following address:

1

Beranbaum Menken Ben-Asher & Bierman LLP
Attn: Bruce E. Menken
80 Pine Street, 32nd Floor
New York, New York 10005

The attorneys' phone number is 212-509-1616. You may call that number if you wish to have further information about the case, or if you need more help in order to join the lawsuit. If you fail to return the "Consent to Sue" form to the plaintiffs' attorneys in time for it to be filed with the Court on or before the above deadline, you might not be able to participate in this lawsuit.

If you choose to join in this case, you will be bound by the judgment, whether it is favorable or unfavorable to the plaintiffs.

The attorneys for the class plaintiffs are being paid on a contingency fee basis, which means that if there is no recovery, the plaintiffs' attorneys will not recover a fee. If there is a recovery, the attorneys for the class plaintiffs will receive either a fee from the defendants or a part of any settlement obtained or money judgment entered in favor of all members of the class, as specified in the attached "Consent to Sue" form. If you sign and return the "Consent to Sue" form attached to this Notice, you are agreeing to designate the class representatives (the plaintiffs named in the caption) to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering into of an agreement with plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit. These decisions and agreements made and entered into by the class representatives will be binding on you if you join the lawsuit. However, the Court has retained jurisdiction to determine the reasonableness of any fee agreement entered into by plaintiffs with counsel, and to determine the adequacy of the plaintiffs' counsel.

## 3.    To Join the Suit, But Not be Represented by the Named Plaintiffs

You can join this lawsuit by representing yourself or by counsel of your own choosing. To do so, you or your attorney must file the appropriate documents with the Court. The address of the Court is: United States District Court, Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007.

## 4.    To Stay Out of the Lawsuit

If you do not wish to be part of the lawsuit, you need not do anything. If you do not join the lawsuit, you will not be part of the case in any way, and will not be bound or affected by the result, whether favorable or unfavorable to the plaintiffs. Your decision not to join this lawsuit will not affect your right to bring a similar case on your own in the future. However, the claims under the Fair Labor Standards Act must be brought within two years, unless the employer's

2

violation of the law was "willful," in which case the claims must be brought within three years of the alleged violation.

## 5.    No Retaliation Permitted

Defendants are prohibited by law from taking any retaliatory action against any person, including a current employee, who joins the lawsuit. Defendants have denied the allegations of the lawsuit, and have raised various defenses. No final decision on the merits of this lawsuit has been made by the Court.

THIS NOTICE AND ITS CONTENTS HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE.

Dated: New York, New York
_____, 2006

> BERANBAUM MENKEN
> BEN-ASHER & BIERMAN LLP
> Attorneys for Plaintiffs
> By: Bruce E. Menken (BEM 1140)
> 80 Pine Street, 32nd Floor
> New York, New York 10005
> Tel. (212) 509-1616

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GINUTIS SIPAS, et al.,                              05 CV 10319 (PAC)(AJP)

            Plaintiff,

-against-

SAMMY'S FISHBOX, INC., et al.,

                        Defendants.
-------------------------------------------------------------X

## **CONSENT TO SUE**

I hereby consent to be a plaintiff in the lawsuit named Ginutis Sipas, et al. v. Sammy's Fishbox, Inc., et al. I hereby consent to the prosecution of any claims I may have under the Fair Labor Standards Act and/or the New York Labor Law for wages, back pay, confiscated gratuities, liquidated damages, costs and attorney's fees, and other relief against defendants.

I authorize the law firm of Beranbaum Menken Ben-Asher & Bierman LLP, its successors and assigns, to represent me in this case.

By signing and returning this Consent to Sue form, I understand that I will be represented by the law firm of Beranbaum Menken Ben-Asher & Bierman LLP without prepayment of attorney's fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from the settlement or judgment amount awarded in my favor, before payment of any sums to me. I understand that Beranbaum Menken Ben-Asher & Bierman LLP may petition the Court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees

4

retained by the attorneys will be either the amount awarded by the Court and payable by defendants, or one third of my total settlement or judgment amount (including fees), whichever is greater.

Dated:        _____

              _____, 2006

                                    Signature:   _____

                                    Name:        _____

                                    Address:     _____

                                                 _____

                                    Telephone:   _____


**NOTE:    PLEASE MAIL THIS FORM WITHIN ONE HUNDRED TWENTY (120) DAYS OF THE DATE OF THE NOTICE OF LAWSUIT TO:**

            **BERANBAUM MENKEN BEN-ASHER & BIERMAN LLP**
            **Attn: Bruce E. Menken**
            **80 Pine Street, 32nd Floor**
            **New York, New York 10005**

5

**EXHIBIT C**

LAW OFFICES OF

# Scott A. Lucas

The Lincoln Building, Suite 1001
60 East 42nd Street
New York, New York 10165
_____

Telephone (212) 573-6906
Fax (212) 286-9516

Of Counsel
STEVEN MITCHELL SACK
JENNIFER L. SAFFER

 

**Re:**   **Lawsuit Against EN Japanese Brasserie**
        XIA, et al. v. BYO Co. (USA) Ltd. d/b/a EN and REIKA YO;
        08-cv-4415 (JGK)

 

## *NOTICE OF LAWSUIT*

**1.     Introduction to the Case**

        This notice is to inform you of a lawsuit pending in the United States District Court, Southern District of New York, against EN Japanese Brasserie and Reika Yo.  This lawsuit claims that the defendants violated the Fair Labor Standards Act and the New York Labor Law by failing to pay eligible employees minimum wages, and by confiscating the employees' gratuities.  This lawsuit claims that the defendants must award unpaid wages, back pay, confiscated gratuities and certain liquidated damages, as well as the attorney's fees, costs and statutory interest to such employees.

        If you worked for EN Japanese Brasserie as a server, runner, busser or bartender at any time since September 2004, you might be eligible to join this lawsuit as a plaintiff.

**2.     To Join the Case and Be Represented by Plaintiffs' Counsel**

        If you fit the definition above, you may join the case (that is, you may "opt in") by completing and mailing the attached "Consent to Sue" form, no later than 120 days after the date of this Notice, to the Plaintiffs' attorneys at

the following address:  Law Offices of Scott A. Lucas, The Lincoln Building – Suite 1001, 60 East 42nd Street, New York, NY 10165.

The attorney's phone number is (212) 573-6906.  You may call that number if you wish to have further information about the case, or if you need more help in order to join the lawsuit.  If you fail to return the "Consent to Sue" form to the plaintiffs' attorneys in time to be filed with the Court on or before the above deadline, you might not be able to participate in this lawsuit.

If you choose to join in this case, you will be bound by the judgment, whether it is favorable or unfavorable to the Plaintiffs.

The attorneys for the class are being paid on a contingency fee basis, which means that if there is no recovery, the Plaintiffs' attorney will not receive a fee.  If there is a recovery, the attorneys for the class Plaintiffs will receive either a fee from the Defendants or a part of any settlement obtained or money judgment entered in favor of all members of the class, as specified in the attached "Consent to Sue" form.  If you sign and return the "Consent to Sue" form attached to this Notice, you are agreeing to designate the class representatives (the plaintiffs named in the caption) to make decisions on your behalf concerning the litigation, the method and manner of conducting this litigation, the entering into of an agreement with Plaintiffs' counsel concerning attorney's fees and costs, and all other matters pertaining to this lawsuit.  However, this Court has retained jurisdiction to determine the reasonableness of any fee agreement entered into by Plaintiffs with counsel, and to determine the adequacy of Plaintiffs' counsel.

## 3.	To Join the Suit, but Not be Represented by Plaintiffs' Counsel

You can also join this lawsuit by representing yourself or by counsel of your own choosing.  To do so, you or your attorney must file the appropriate documents with this Court.  The address of the Court is:  United States District Court, 500 Pearl Street, New York, New York 10007.

## 4.	To Stay Out of the Lawsuit

If you do not wish to be part of the lawsuit, you need not do anything. If you do not join the lawsuit, you will not be part of the case in any way, and will not be bound or affected by the result, whether favorable or

unfavorable to the Plaintiffs.  Your decision not to join this lawsuit at this time will not affect your right to bring a similar case on your own in the future.  However, the claims under the Fair Labor Standards Act must be brought within two years, unless the employer's violation of the law was "willful," in which case the claims must be brought within three years of the alleged violation.

**5.     No Retaliation Permitted**

Defendants are prohibited by law from taking any retaliatory action against any person, including a current employee, who joins the lawsuit. Defendants are expected to deny the lawsuit's allegations and raise various defenses.  The Court has not yet made a final decision on the merits of this lawsuit.

THIS NOTICE AND ITS CONTENT HAVE BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK, THE HONORABLE JOHN G. KOELTL, UNITED STATES DISTRICT JUDGE.

Dated:        New York, New York
              _____, 2008

                              Law Offices Of Scott A. Lucas
                              *Attorneys for Plaintiffs*

                              By_____
                                  Scott A. Lucas, Esq. (SL-6316)
                              The Lincoln Building – Suite 1001
                              60 East 42nd Street
                              New York, NY 10165
                              (212) 573-6906

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
YOU YOU XIA, PETER CLASEN and
CHULEEPORN PHUTRAKUL, *et al.*,

        *Plaintiffs*,     08-cv-4415 (JGK)

    -against-

BYO CO. (USA), LTD. d/b/a EN and REIKA YO,

        *Defendants*.
-----------------------------------------------------------X


## CONSENT TO SUE


    I hereby consent to be a plaintiff in the lawsuit named <u>You You Xia, *et al.* v. BYO Co. (USA), Ltd. d/b/a EN and Reika Yo</u>.  I hereby consent to the prosecution of any claims I may have under the Fair Labor Standards Act and/or New York Labor Law for wages, back pay, confiscated gratuities, liquidated damages, costs and attorney's fees, and other relief against defendants.


    I authorize the Law Offices of Scott A. Lucas, its successors and assigns, to represent me in this case.


    By signing and returning this Consent to Sue form, I understand that I will be represented by the Law Offices of Scott A. Lucas without prepayment of attorney's fees.  I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from any settlement or judgment amount awarded in my favor, before payment of any sums to me.  I understand that the Law Offices of Scott A. Lucas may petition the court for an award of fees and costs to be paid by defendants on my behalf.  I understand that the fees retained by the attorneys will either be

the amount awarded by the Court and payable by defendants, or one third of my total settlement or judgment (including fees), whichever is greater.

Dated: _____, 2008

Signature: _____

Name: _____

Address: _____

_____

Telephone: _____

**<u>NOTE</u>:    PLEASE MAIL THIS FORM WITHIN ONE HUNDRED TWENTY (120) DAYS OF THE DATE OF THE NOTICE OF LAWSUIT TO:**

**Law Offices of Scott A. Lucas**
**The Lincoln Building – Suite 1001**
**60 East 42nd Street**
**New York, NY 10165**

**EXHIBIT D**

NEW YORK
CITY BAR

Media Advisory                                          Contact: OROMA MPI
February 14, 2008                                              (212) 382-6713

## LEGAL REFERRAL SERVICE LAWYERS OBTAIN
## GROUND-BREAKING DECISION FOR WAIT STAFF IN TIPPING CASE

**NEW YORK**—Today, New York State's highest court unanimously reinstated a complaint brought by 14 waiters against their employer, World Yacht, Inc., for illegally keeping the automatic gratuity charges it collected from guests. The waiters were represented by Steven M. Sack and Scott A. Lucas, two attorneys retained through the NYC Bar Association's Legal Referral Service, a program that refers experienced lawyer referrals to the public.

The waiters alleged that World Yacht, an operator of dining cruises, added a 20% service charge at banquets in place of the tip, but failed to distribute it to the wait staff. The waiters also alleged that World Yacht failed to distribute the automatic gratuities that it added to, or included in, the price charged to certain classes of customers.

In its decision, the Court of Appeals ruled that the waiters had a viable cause of action against World Yacht for violating Labor Law § 196-d, which prohibits employers from retaining "any part of a gratuity" or "any charge purported to be a gratuity for an employee". New York State's highest court held "the statutory language of Labor Law § 196-d can include mandatory charges when it is shown that employers represented or allowed its customers to believe that the charges were in fact gratuities for its employees." The case is being remanded to the New York County Supreme Court for trial.

"This is a case about the difference between right and wrong. It is simply wrong for a restaurant or banquet operator to add a 20% service charge if it has no intention of distributing it to the wait staff," said attorney Scott Lucas. "We're glad the Court of Appeals has made it harder for restaurants and caterers to keep gratuities that were intended for the wait staff."

"Our clients, the waiters, were underpaid, and were turned away by other lawyers until they, like more than 400 people every day, contacted the New York City Bar Lawyer Referral Service, which referred them to us," said employment attorney Steven Sack, who has worked with the Legal Referral Service since 1984. "In my practice, I represent those individuals who don't get their fair share, such as in this case—where compensation that waiters should have received was allegedly withheld by their employer."

The Legal Referral Service, the largest in the country, handles over 100,000 calls per year, directing the public to experienced lawyers in a vast range of legal fields. The Service can be reached at 212-626-7373, (212-626-7374 for Spanish speakers), or www.nycbar.org

The Attorney General, State Department of Labor, and workers' rights organizations all filed amicus briefs with the Court of Appeals in support of the waiters.

**About the Association**

The New York City Bar Association (www.nycbar.org) was founded in 1870, and since then has been dedicated to maintaining the high ethical standards of the profession, promoting reform of the law, and providing service to the profession and the public. The Association continues to work for political, legal and social reform, while implementing innovative means to help the disadvantaged. Protecting the public's welfare remains one of the Association's highest priorities.

**EXHIBIT E**

# Law
# Reporter

VOLUME 51, NUMBER 6     AUGUST 2008

## SPOTLIGHT
**Counsel show brain damage can occur even in minor collision with no apparent head injury, 193**

## RECENT CASES

Admiralty, 168
Attorneys, 168
Automobile Accidents, 169
Aviation, 171
Civil Rights, 171
Commercial Litigation, 172
Consumer Protection, 173
Damages, 174
Employment Law, 175
Evidence, 177
Family Law, 178
Government Liability, 178
Insurance, 179
Intentional Torts, 180
Medical Negligence, 182
Negligence, 183
Practice & Procedure, 184
Premises, 185
Products Liability, 186
Professional
    Negligence, 187
Railroads, 188
Schools, 189
Toxic Torts, 190
Workplace Safety, 191



AMERICAN
ASSOCIATION *for*
JUSTICE

～ ENDOWED BY SIDNEY GILREATH ～

## INTENTIONAL TORTS

**Real estate broker accuses competitor of theft: Abuse of process: Economic losses: Emotional distress: Verdict: Punitive damages.**

*Brown v. Suggs*, N.Y., New York Co. Sup., No. 605492-00, Nov. 30, 2007.

Brown was allegedly the highest-selling real estate agent at an agency run by Suggs. When Brown got close to the date when she could pursue her own real estate broker's license, Suggs filed an allegedly false criminal complaint against Brown for stealing. Suggs then petitioned the licensing authorities to reject Brown's application for a broker's license and prohibit her from ever selling real estate in the state. She also sued Brown for the alleged stealing and refused to give her commissions on pending deals.

The suit was later dismissed. After an 18-month investigation, the licensing board granted Brown a broker's license. Brown incurred losses of about $34,000 in unpaid commissions and more than $3,000 in attorney fees in connection with the arrest. She also suffered emotional distress and damage to her reputation.

Brown sued Suggs, alleging abuse of process and breach of contract in failing to pay commissions. Plaintiff argued that defendant never had a basis for believing she had stolen anything but filed the charges to prevent competition and avoid paying commission fees. Plaintiff produced evidence at trial that defendant often tried to prevent competition from other brokers and accused her salespersons of misconduct to avoid paying commissions.

Defendant contended that plaintiff was not permitted to work at home and thus she had reason to believe the files plaintiff had at home were stolen. Further, defendant argued, taking files home violates licensing regulations and poses a risk to clients' privacy.

The jury awarded plaintiff compensatory damages of $2.6 million for the abuse of process claim and found that she was also entitled to punitive damages, to be determined at a later date. The jury also awarded about $53,000 in unpaid commissions.

Defendant's motion to reduce the award or vacate the verdict is pending.

*Plaintiff's Counsel*

**Scott A. Lucas**, New York, N.Y.

# The New York Times

© 2008 The New York Times

NEW YORK, SUNDAY, MARCH 23, 2008

$5 beyond the greater New

2    RE  MB

## BIG DEAL

### JOSH BARBANEL

## Town Houses at Risk

WILLIE KATHRYN SUGGS has been selling brownstones in Harlem since the bad old days, when crime was rampant and downtown brokers did not venture there. Now Ms. Suggs, a key figure in the Harlem town house renaissance over the last two decades, is in danger of losing two town houses she owns in West Harlem.

A legal advertisement published by the city sheriff on March 14 announced that two houses owned by Ms. Suggs — a three-story tan brick town house on Hamilton Terrace, in the heart of the Hamilton Heights Historic District, and a four-story limestone building on West 145th Street near Amsterdam Avenue — would be auctioned off in May to pay a legal judgment against her.

It turns out that last November, Ms. Suggs, who has worked in real estate since 1985 and has operated her own firm in Harlem since the 1990s, suffered a devastating setback in an eight-day civil trial in State Supreme Court in Manhattan. The jury, according to court records, found that Ms. Suggs had acted for personal motives when she filed complaints with the district attorney and the police that led to the arrest of a sales agent working for her in 2000. The employee was accused of stealing documents from the office.

The former employee, Raquel Brown, was completing a yearlong stint as a sales agent, required by the state before she would become a broker and go into business for herself. But a few days before her term was up, she said, Ms. Suggs had her arrested, withheld commissions and warned



West 145th Street town house

her that she would never work in real estate in Harlem again. Ms. Suggs maintained that she had acted properly.

The six-member jury voted unanimously to award Ms. Brown $2.6 million in damages to compensate her for abuse of the legal process, with punitive damages to be set at a later date. The jury also found Ms. Suggs liable for unpaid commissions and interest.

Ms. Suggs referred questions to her lawyer, Morton Newburgh. He said that this was a complaint from one agent "out of all the years Ms. Suggs has been in business working with many, many agents." Sales agents who have worked for Ms. Suggs testified both for her and against her.

At the trial, Ms. Brown's lawyer, Scott A. Lucas, introduced a six-page complaint signed in 1999 by six agents, who said that Ms. Suggs had issued commission checks that bounced, constantly threatened to fire agents, and took over customers (and commissions) from sales agents when calls came in for them. "The jury's verdict," he said, "provided a sense of vindication not only to the plaintiff, but to all of the other former salespersons who felt cheated and abused by Ms. Suggs."

It is unclear whether Ms. Suggs's town houses will actually be sold to pay her debts. In a hearing after the trial, Justice Barbara R. Kapnick of State Supreme Court indicated that the award might be reduced. Mr. Newburgh said Ms. Suggs could post a bond during an appeal, or might work out a settlement with Ms. Brown.

Ms. Brown now operates her own business, the Brown Real Estate Company, with an office on St. Nicholas Avenue, not far from Ms. Suggs's office. Many of her listings are town houses.



The Looting of Yankee Stadium

How to Grill Almost Anything

Selling Harlem to the White Man

JULY 14, 2008

# *NEW YORK*®

Clay
Felker
1925–2008

## The Man Who Invented New York
### By Tom Wolfe

$3.99 USA/CANADA

7 25274 01912 0    29

NYMAG.COM

Willie Kathryn Suggs, the so-called Queen of Harlem Real Estate, has
sent local housing prices soaring. She's also touched off
a heated debate: Should Harlem be preserved as an affordable haven for blacks?
Or sold to the highest bidder?

# WHOSE
# HARLEM
# IS IT?

—

*By* ROBERT KOLKER

er, they were handling some 60 closings a year. To hear at least one former colleague tell it, Suggs became obsessed with her own success. At one point near the peak of the boom, says Laura DeJesus, a former sales agent, Suggs interrupted a staff meeting to say, "I'm the greediest person you will ever meet in your life. And I just want you to know that." "We all started laughing," DeJesus says. "She leaned forward again. She said, 'I am not kidding. This is not a joke.'"

IN 2005, Suggs bought a pretty four-story limestone townhouse on a prized block of historic Hamilton Terrace, her second property in Harlem. She paid $895,000; once it's renovated, she says, she believes it could sell for $4 million. What makes the purchase notable, her critics say, is that Suggs had originally been hired to sell the place. The owner, a woman in her seventies named Henrietta Rouse, had lived there since 1976. Some suspect that Suggs deliberately never found a buyer until she could snap it up for a below-market price. Suggs paints herself less as an owner than a steward of the property. "Oh, I love Mrs. Rouse," she says with a giggle, showing me around the house one sunny afternoon. "She's like my older sister. This is really her house. I'm just taking care of it." But others see it differently. "I remember the conversations," says Bianca Ferraioli, a retired broker who once worked for Suggs. "Willie wanted to put it in her nephew's name, because she thought it would look suspicious if she put it in hers."

Suggs has frequently been accused of dubious, and even illegal business practices. More than a half-dozen of her former sales agents have reported her for various offenses. Some say they saw Suggs misrepresent homes to potential buyers, and even to her own sales agents. One trademark Suggs move is to hold up closings with last-minute demands for money. Having voluntarily spent her own money on improvements to boost a property's sale price (and her commission), Suggs would then file liens against the property to force the seller to reimburse her. In 2004, she was sued for a lien she presented for just $8,995. In 1999, six former sales agents filed a joint complaint with the state of-

Suggs of not paying the portion of commissions she'd verbally promised them. The complaint went nowhere (a common outcome for that office, some brokers say), but two sales agents remember Suggs responding to objections by saying, "This is Harlem. We make up the rules as we go along." "Every commission check she's given me has bounced," says Micki Garcia,



**2007**
*65 East 125th Street*

who worked for Suggs a few years ago as a sales agent. "Three times I had to take her across the street to the bank to make sure there were funds."

Suggs has also been accused of being vindictive. "When she fired someone, she'd create a conspiracy against the person after the person was gone," says Garcia. "She'd talk about that person with new people, so they'd all have the same impression. She just got threatened whenever she saw anyone start to grow." And Suggs had a strange tendency to call the police whenever she decided to fire someone. She did it to Marilyn Henderson in 1998, and Aaron Willoughby in 2000, and Lisa Downing in 2004. These people, Suggs tells me, were disturbing the peace—some were pressing her for money, others were confronting her in different ways. "You cannot make a scene. I don't care *who* it is. In my family, if people misbehave, you call the police. That's what they're there for."

No one had much success pushing back against Suggs until 2000, when she accused a sales agent named Raquel Brown of stealing files from the office in the middle of the night. Young and ambitious in her own right, Brown had just handled

sale at 416 Convent Avenue. Shortly after, Suggs filed theft charges against Brown at the 30th Precinct, and later sued her. Brown countersued, denying any theft and accusing Suggs of "abuse of process," or using the legal system for personal ends. The lawsuits wound through the courts for seven years. A judge determined in 2003 that there had been no theft of files—that Raquel Brown was just working from home like many sales agents do. The abuse-of-process case made it to trial last November. After a short deliberation, the jury ruled against Suggs, awarding Brown $2.6 million, one of the highest judgments ever in an abuse-of-process case in New York.

The judge later reduced the award, and the parties reached a settlement. Neither side will discuss the terms, but Brown says she feels vindicated; some close to her have suggested that Suggs ought to lose her real-estate license over the matter. "Will the public place its trust in a broker found guilty of abuse of process?" Brown asks. "How her story is going to end will be very interesting."

IT'S A SUNNY Thursday afternoon, and Suggs is showing me a tidy one-bedroom co-op she is selling on a high floor of a doorman building on 145th Street. There's a brilliant south-facing view of Harlem, and Suggs is pointing out the major landmarks—City College, Columbia University, the tall but dingy Adam Clayton Powell building. She takes special note of the larger condo and co-op developments, particularly those that are friendly to new people from outside the neighborhood. Then I ask Suggs what the word *gentrification* means to her.

It's not about identity politics or cultural preservation, she tells me. It's about math. "You ask the average African-American resident of Harlem," she says, "they'll say it means 'nonblack people are moving in and we're being forced out.' And that's not gentrification. Gentrification means a change in the social, economic makeup of a neighborhood. Not necessarily racial. What is going to change, is anybody with money who can afford the house is gonna buy the house. And if the house is very expensive, because the black middle class is smaller than the white middle class, there will be more nonblacks buying the houses."

Of course, the *(Continued on page 81)*

PHOTOGRAPHS: OPPOSITE PAGE AND THIS PAGE, CAMILO JOSE VERGARA/INVINCIBLE CITIES

**EXHIBIT F**

LAW OFFICES OF
## STEVEN MITCHELL SACK

110 East 59th Street, 19th Floor
New York, New York 10022
Phone: (212) 702-9000 ext. 210
Cell #: (917) 371-8000
email: stevensack54@hotmail.com
Facsimile: (516) 623-9115

## BIOGRAPHY

STEVEN M. SACK
JONATHAN S. SACK*
SCOTT LUCAS
ERIC STERN
———
*ALSO ADMITTED IN

Steven Mitchell Sack maintains a private law practice in New York City devoted primarily to severance negotiations of terminated workers, discrimination lawsuits, contract negotiations, representation of salespeople in breach of contract and commission disputes and general labor law. The following is a brief description of his background and accomplishments:

| | |
|---|---|
| Education & Honors: | Boston College Law School, Juris Doctor, 1979<br>Stony Brook University, B.A., 1975, Phi Beta Kappa, Magna Cum Laude |
| Author: | The Salesperson's Legal Guide (Prentice-Hall, 1981)<br>Don't Get Taken!: A Preventive Legal Guide To Protect Your Home, Money, Family and Job (McGraw-Hill Book Company, 1985)<br>The Complete Legal Guide To Marriage, Divorce, Custody and Living Together (McGraw-Hill Book Company, 1988)<br>NAPL Employee Handbook (NAPL, 1988)<br>Employment Law: A Printer's Handbook (NAPL, 1991)<br>Sales Rep Strategies For Dealing With Principals Successfully: Negotiations, Contracts, Working Relationships & Terminations (The Sales Rep's Advisor, 1991)<br>The Employee Rights Handbook: Answers To Legal Questions From Interview To Pink Slip (Facts on File Inc., 1991)<br>Don't Get Taken!: How To Avoid Common Consumer Rip-Offs (Consumer Books, 1993)<br>The Hiring & Firing Book: A Complete Legal Guide For Employers (Legal Strategies Inc., 1993)<br>Legal Documents For HR Professionals: A Compendium of Sample Contracts, Forms & Checklists for Employment, Separation and Day-to-Day Operations (Legal Strategies Inc., 1994)<br>Legal Documents For Employers: Sample Contracts, Forms & Checklists for Hiring, |

## Biography Con't.

Firing, and Managing Workers (Legal
Strategies Inc., 1995)
From Hiring To Firing: The Legal Survival
Guide For Employers in the 90's (Legal
Strategies Inc., 1995)
The Lifetime Legal Guide (Book-Of-The-
Month Club, 1996)
The Working Woman's Legal Survival Guide:
Know Your Workplace Rights Before It's Too
Late (Prentice Hall Press, 1998)
The Lifetime Family Legal Guide (Prentice
Hall Press, 1998)
Getting Fired: What To Do If You're
Fired, Downsized, Laid off, Restructured,
Discharged, Terminated, Or Forced To
Resign (Warner Books, 1999)
The Employee Rights Handbook: The Essential
Guide for People On The Job (Warner Books,
2000)
The Lifetime Family Legal Guide Twenty First
Century Edition (Book-Of-The-Month Club,
2000)
Sales Rep Strategies For Dealing With
Principals Successfully - Third Edition
The Sales Rep's Advisor, 2005)

**Admissions:**        Admitted To Practice Before The New York
Bar, October 1980
Southern and Eastern District of Federal
Courts, 1981
United States Tax Court, 1982

**Affiliations:**      American Bar Association (Labor and
Employmen Division)
New York County Lawyer's Association
New York State Bar Association

**General Counsel:**   New York Boot & Shoe Traveler's
Association, (B&STA) 1982
National Association of Printers and
Lithographers, (NAPL) 1985, Labor Counsel
New York Manufacturer's Apparel Reps,
(NYMAR) 1986
Office Products Representative's
Association, (OPRA) 1988
National Association of Independent
Publisher's Representatives, (NAIPR) 1988
United Association of Manufacturers Reps,
(UAMR) 1989
Eastern Outdoor Representatives
Association, (EORA) 1990

## Biography Con't.

Natural Product Broker's Association,
(NPBA) 1991
New England Chapter of the National
Association of Electrical
Representatives, (NEMRA) 1991
Broker Management Council, (BMC) 1992
United League of Toy Representatives
Association, (ULTRA) 1992
Automotive Service Industry Association,
(ASIA) 1992
National Association Division Seven
Representatives, (NADS) 1993
Bureau of Wholesale Sales
Representatives, (BWSR) 1995
National Ornament & Electrical Lights
Christmas Association, Inc., (NOEL) 1995
Manufacturers Representatives of America,
Inc., (MRA) 1995
National Association of General
Merchandise Representatives, (NAGMR) 1995
Manufacturers Agents For The Food Service
Industry, (MAFSI) 1996
MRC Members of the Specialty Equipment
Market Association, (SEMA) 1999
The Food Service Group, Inc. (2001)
Independent Professional Representatives
Organization, (IPRO) 2002
New England Apparel Club, (NEAC) 2003

Media Appearances:    The Oprah Winfrey Show, The Sally Jesse
                      Raphael Show, CNBC's Smart Money, The
                      Joe Franklin Show, People Are Talking,
                      CNN News, Late Night America, AM Chicago
                      and hundreds of appearances on radio
                      talk shows throughout the U.S.

Interviews:           The Wall Street Journal, The New York
                      Times, RIA's Alert, Sales & Marketing
                      Management Magazine, Industrial
                      Distribution Magazine, Sales Manager's
                      Bulletin and dozens of business
                      publications, newspapers and newsletters

Arbitrator:           Served as a commercial arbitrator in
                      breach of contract, entertainment and
                      employment-related disputes for the
                      American Arbitration Association from
                      1984-1996

Seminars:             Conducts corporate seminars for sales
                      reps and companies throughout the U.S.

## Biography Con't.

| | |
|---|---|
| **Trial Strategist and Expert Witness:** | Is engaged in this capacity by law firms throughout the U.S. |
| **Radio Host:** | Hosted a nationally syndicated radio talk show "Steven Sack, the Employee's Lawyer" on Sundays 9-12 p.m. eastern standard time through the i.e. america broadcasting network from 1999-2004 |
| **Legal Consultant:** | Serves as a consultant to Findlaw.com, a leading legal internet web site and The Sales Rep's Advisor, a monthly legal, financial and business newsletter |
| **Legal Referral Service:** | Has been accepted for panel membership and receives labor and employment referrals from the New York City Legal Referall Service since 1985 |

**References are available upon request.**